The Indictment in this case having been found while Judge Caskie was the prosecuting Attorney of the Court, Judge Robertson, of the Court of Chancery, for Henrico county, sat on the Trial, according to sec. 10, chap. 158, Code of Va , page 619.

Commonwealth ⎫
    *vs.* ⎬ April 28, 1851.
William P. Adcock. ⎭

The prosecution was under Section 28, chap. iv. Sess. Acts, 1847-48, page 102-103.

" Any carrier or other person, being free, to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered to be carried for him, or any other person entrusted with such property, who shall embezzle or fraudulently convert to his own use, or shall secrete with intent to embezzle or fraudulently convert to his own use any such money, goods or other property, either in the mass as the same were delivered, or otherwise, and before delivery thereof at the place at which, or to the person to whom they were to be delivered, shall be deemed by so doing to have committed larceny thereof."

The Indictment charged that the accused, " being a carrier for hire," on the 20th of September, 1848, embezzled one box, containing sheetings, shirtings, linsey, tweeds, &c., the property of Word, Ferguson and Barksdale, which had been delivered to him to be carried to Buchanan.

For the prosecution, John A. Meredith, (in the absence of John B. Young, Commonwealth's Attorney.)

For the defence, Robert G. Scott, Irving & Johnson and Wm. P. Byrd.

The prisoner appeared to be about 35 years of age; he had coal black hair and dark eyes, a freckled skin, and cheeks somewhat hollow; he had been confined in jail a considerable time, and is said to have suffered with sickness lately. On his arraignment he pleaded "Not Guilty."

The following were the Jury.

William Cullingworth, Jr., John Braugh, John Lindsey, William Bethel, John Via, James H. Britton, John Nettles, Robert J. A. Smith, Richard Tinsley, Ryland Ford, George Richardson, William M. Loving.

For the prosecution.

*James B. Ferguson, sworn.*—I am one of the firm of Word, Ferguson & Barksdale. On the 12th of September, 1848, a box of goods was put up at our store and marked to Robert M. Ayres & Co., Buchanan. On the morning of the same day a coloured man, who called himself Alick, and said he was the head man on board the canal-boat, General Scott, called at the store and said he would take the box and it would be safely delivered at Buchanan. Accordingly the box was delivered, but our young man whose duty it was to attend to the delivery, failed to take a receipt for it. About fifteen days afterwards, we received a letter from Ayres & Co., announcing that the box had not reached them; we then ascertained that we had no receipt, and all we had was the statement of our young man, that he had delivered the box at the boat. I went up on the basin and saw Adcock, who was captain of the boat, General Scott; he said he knew nothing of the box; I then asked him if he knew where his head man Alick was; he said he did not know. In a few days he came with his head man to my store, and I immediately recognized Alick as the man who had called; I got a warrant to arrest him, but thinking I could get farther information on the subject, I asked several of the captains of boats running on the canal, to let me know if they heard any thing of it. In about ten days I heard from a man who had been on one of the boats, that a box of goods had been opened on board the General Scott. I got a buggy and went to New Market, where I found the General Scott and Captain Adcock; I procured a search warrant and went aboard; we told the captain of our business; he said we could search, but we would find nothing; he made no farther

objection.   We searched, and under his bed, I found some sheeting and osnaburgs which had the private mark of Word, Ferguson & Barksdale, and in his chest, which he said was his private chest, I found some fringe, spool cotton and other articles, which had our private mark, and which I do not doubt to have been a part of the goods that were in that box.   Adcock then said that he supposed his head man Alick Greenley had taken the goods, and he thought it probable if I would go after him I would find either the goods or the money for which they had been sold.   I went to Greenley's house and there I found forty dollars in money; the only article found there that I thought probably belonged to the goods lost, was a little worsted cap, commonly called a Russia cap.   I carried Greenley to Scottsville, and there Mr. Blair told me that Captain Adcock had put out this box at his place on Sunday, and had afterwards taken it away.   This induced me to arrest Adcock, and I had him brought to Richmond.

*Cross-examined by Scott.*—These goods were sold to Ayres & Company·   They were to pay the freight on them ; we do not commonly pay the freight on goods so sent away, but we pay the drayage and toll and charge them ; we forwarded a bill of these goods to Ayres & Co. ; we failed to take a receipt as I have said ; we did not pay the toll at that time, waiting for the captain to come down, but I suppose he passed the toll-house without dfficulty, as he had on wood on freight for the James River Company ; I do not know what the boat was loaded with as she same down, but when I saw Adcock first, the boat was loaded with iron pipe.   It was in about 15 days that Adcock was at our store ; I don't recollect whether he came voluntarily or I called him in, but he asked if we had heard of the goods ; when I was searching, I did not search Adcock's house particularly ; I heard that his wife was very respectably connected and wished to avoid distressing her if possible.   We credited to Ayres & Co. the money I got from Alick Greenley, and we arranged the balance due on their account for these goods by a compromise.

*Matthew Blair, sworn.*—About the middle of September, 1848, perhaps the 16th or 17th, Mr. Adcock, captain of the General Scott, brought a lot of goods to me in Scottsville ; a black boy came and told me the boat had some goods for me, and they wanted me to take them ; this was on Sunday, and according to

my invariable custom on that day, I refused to receive them. After sending a white boy (I think, named Roberts) to me, Adcock came himself, and earnestly begged me to receive the goods; he put them out on the platform; it was raining and the goods being very heavy, I gave him the key of the warehouse and told him he might put them in there, and if all turned out right, I would pay him the freight some other time; on examining the next day, we found all the goods for me right, and there was one box over, marked Ayres & Co., Buchanan; as Adcock came down I told him of this box; he said he was glad to hear of it, as he had been a box short at Lynchburg; he asked that it might remain there until he called for it on his way up; he returned from Richmond heavily laden with pipe for the Staunton Water Works; I had the box put out on the platform for him; and after some delay in discharging and receiving freight, he took it off. I informed Mr. Ferguson of these facts as he has told you.

*Cross-examined by Scott.*—I did not know what he put out on the Sunday alluded to; I think it was about a week before I saw Adcock again; I do not recollect whether there was any interruption of navigation at that time; it generally takes a night and two days for a freight boat to go from Scottsville to Lynchburg; as she came back I do not know what his boat was loaded with; I do not know, of my own knowledge, that he remained with the boat as she went to Lynchburg; he collected the freight on my goods as he came down, and was then informed about the box. I am sure it was on his trip back from Richmond, that he had the box re-delivered to him.

*By the Court.*—I was present when the box was taken out and helped to take it out of the warehouse.

*Littleton Roberts, sworn.*—I was on the General Scott; on the first or second trip I was on, we went to Scottsville; we got there Sunday; this box was put off there by mistake; we went on to Howardsville, I think it is, but I don't know much of the names of places up there. We returned to Richmond and took on a load of pipe; we went to Scottsville and took off the pipe and took on this box again; we went on up, I forget how much farther, and then came back to Richmond; He didn't take on much load in Richmond after the fuss about the box; he hurried out through the gage-house; the box as we came down was put

under the deck; when we got up by General Cocke's, I was out driving on the tow-path, and I heard some knocking on the boat; I don't know what the knocking was, but when I came aboard I saw a box open, and some of the goods were under his bed and some were in his cabin; he went on and hid the box and goods under the stable deck; he seemed *afeard* he would be caught; when he got up to his house he stopped, some of the goods had got wet, and he took all the goods into the stable; he sent on the boat and hands to Lynchburg; I left the General Scott in Lynchburg, and got a place on the James B. Renswick; I can't speak positively as to the box being taken off any where else, but I know it was taken off in Scottsville; the goods were hid by the black man Alick and the Captain. Alick was head man; I was driver.

*Cross-examined.*—When we went on to Howardsville, I don't know whether we went farther or came back; the third time, when the box was broken up, we *did go* on from Howardsville. The first trip, I think we took off all our freight at Columbia and Howardsville, and that we did not go to Lynchburg; the second trip, I think we went to some places above Scottsville; when we came down, I think we brought down some tobacco; I don't know where it was taken on; the third trip I think we carried some plaster and some bacon; Adcock stopped at Howardsville; there were two black men on the boat, one of them was Alick Greenley; Alick and I quit about the same time; I quit in the day time. We carried the goods on in the stable; Adcock said he would follow on soon; I said she didn't take on *a load* the third time; we took on a little; I didn't hear any thing about the box till we were about to start; when we were in Richmond, the box was under the cabin deck; under the stern deck; to get to it, you would go down into the cabin and go right under the deck; at Howardsville there might have been some little thing taken off, but I do not remember.

*James B. Ferguson, recalled.*—I was at New Market some time in November; there I found the General Scott on her way down.

The evidence for the prosecution closed.

For the defence:

*Richard Reins, sworn.*—I met Captain Adcock in Lynchburg,

in the fall of 1848; I mentioned to him that I had lost some goods, and he said that his boat had been robbed.—

*The Court.*—Do you offer in evidence for the defence the statements of Adcock?

*Scott.*—This was before he was charged with any offence, and when he was under no motive to misstate the facts. After argument,

*The Court* said the statements of Adcock were inadmissible.

*William B. Roberts, sworn.*—I reside in Howardsville; I saw Adcock in the fall of 1848; he came up to Howardsville and unloaded something there, and afterwards went off to take up some pig iron; when in Howardsville he complained of being sick and stopped, sending on the boat to Lynchburg with Alick; there might have been ten days between the two trips; the last time I don't remember seeing Littleton Roberts aboard the boat; until this thing occurred, I never heard Adcock's honesty doubted; he had stood very fair among his neighbours; General Cocke's is in Fluvanna county.

*Cross-examined.*—When he stopped in Howardsville, he staid about ten days and said he did not know what kept his boat so long; Howardsville is in Albemarle county.

*Royal Blackburn, sworn.*—I saw Alick Greenley in jail and he had a considerable sum of money; he had a pretty stout roll of notes; I looked over his shoulder and saw a $30 note; don't know about the other notes.

*William A. Scott, sworn.*—I have known Adcock since 1844 or 1845; I never heard any charge against his honesty; I did not consider him a man of much respectability; he was indolent and fond of drink.

*Charles Scott, sworn.*—I have known Adcock about the same length of time that my brother (W. A.) has; I can't say I have known him very well; I have always regarded him as an honest man, and at first I thought him a business man, but lately not so much so.

The evidence closed.

The case was argued at length by *Meredith* for the Commonwealth, and *Johnson, Byrd* and *Scott* for the prisoner.

The Jury, after retiring about an hour, returned with a verdict.

They found the prisoner "Guilty," and ascertained his term of confinement in the penitentiary at one year.

Notice was given of a motion for a New Trial.

On Monday and Tuesday, May 5th and 6th, 1851. The Court (Hon. John Robertson on the bench) heard the argument upon the motion for a new trial.

*Henry P. Irving.*—We move on two grounds :

I. That the goods are proved to be the property of Ayres & Co., and not of Word, Ferguson & Barksdale, as laid in the Indictment.

II. That the offence, if committed at all, was not committed within the Jurisdiction of this Court.

On the first point, *Irving* cited authorities.—The indictment must set forth *the owner*, and it must be so proved.—Starkie's C. P. 213, 223, 74. Archbold's Crim. Plead. 211, 213, 215 : 324 for form of indictment ; Roscoe's Crim. Ev. 584-585 ; the goods were not the property of W., F. & B.—Angel on Com. Carriers 465, 468 ; Chitty on Contracts, 438, 484. Nor can the doctrine of *stoppage in transitu* avail the Commonwealth.—1. Selwyn's N. P. 347. 2nd Selwyn 518, 521. Nor was there any *special property* in the goods left in W.. F. & B. which would support the indictment.—Smith's Mercantile Law, 502 and notes 501.

On the second point *Irving* cited Roscoe, 403.

*Young, against the motion.*—There may be a distinction between the rules of pleading, and proof in larceny and embezzlement —Archbold's Crim. Plead. Edit. 1846, 342, 328, 130. Side 282, 180. New Code, 770. 2 Va. Cases, 396. Is the allegation of property in one man or another, *descriptive* and so necessary to be proved ? But if necessary, there is sufficient proof. Word, F. & B , had yet an interest ; they had not so delivered these goods as to furnish to Ayres & Co. an adequate remedy against the carrier.—Chitty on Contracts, 127-128. The right of stoppage in transitu might also apply.

*Scott,* for the motion, replied, citing Archbold's C. P. 341, 328, 337. Stat. of George IV. 2 East's P. C. 650. King v. Carson. Russ. & Ryan 303. Starkie's Cr. Pl. 229. Angel's Com. Carriers 465, sec. 497. There was absolutely no interest in W., F. & B. from the time the goods were packed and delivered to Adcock.

*The Court.*—It has, I think, always been held necessary in prosecutions for larceny, to allege the property as, in the real owner, and to prove it, if the Commonwealth had the means of knowing who the owner was. I do not see why a different rule should prevail in embezzlement, more especially as our Code makes that offence a statutory larceny. This being the rule, the proof seems insufficient and variant. Word, Ferguson and Barksdale had sold the goods and charged them to Ayres & Co., and by their (A. & Co.'s ) expressed or implied authority, had delivered them to the carrier. I think the property was fully vested in Ayres & Co., and that they had full remedy against the carrier, though no receipt was retained. I do not perceive that a member of the firm of W., F. & B., would have been incompetent to prove the delivery, but if he were, the delivery might have been proved by their young man, or the possession of Adcock might have been proved by Littleton Roberts. There seems, then, to have been no special property remaining in Word, F. & B. The right of *stoppage in transitu*, does not apply ; that right gives no interest in, or even lien upon the goods ; it is a mere right *dependant* for its exercise *upon the contingency*, that the vendee shall become insolvent before the goods are delivered to him. There is no proof that any such state of facts existed here. With these views, I feel compelled to set aside the verdict and grant a new trial.

(The question of Jurisdiction was very little pressed ; it is presumed a new trial would not have been granted on that ground, but I do not find in my note any allusion to it as made by the Court.                                          R. R. H.)

(After the above note was in type, *Mr. Young* informed me that the Court, in the course of the argument, intimated very clearly that the question of Jurisdiction need not be argued for the Commonwealth, and that if the case rested on that ground alone, the motion for a new trial would be overruled.   R. R. H.)